**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JODY EZELL, Derivatively on Behalf of Nominal Defendant CABOT OIL & GAS CORPORATION, | Case No. |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. | |
| DAN O. DINGES, SCOTT C. SCHROEDER, DOROTHY M. ABLES, RHYS J. BEST, ROBERT S. BOSWELL, AMANDA M. BROCK, PETER B. DELANEY, ROBERT KELLEY, W. MATT RALLS, and MARCUS A. WATTS, | |
| Defendants, | |
| and | |
| CABOT OIL & GAS CORPORATION, | |
| Nominal Defendant. | |

Plaintiff Jody Ezell ("Plaintiff"), by and through her undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Cabot Oil & Gas Corporation ("Cabot" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, Contribution for Violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), and insider trading (i.e. *Brophy* claim). Plaintiff's allegations are based upon her personal knowledge as to herself and her own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Cabot with the U.S. Securities and Exchange Commission ("SEC"), press releases, news

reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.    NATURE AND SUMMARY OF THE ACTION

1.      Cabot is an oil and gas company that explores, develops, produces, and markets oil and gas properties in the United States.  Its primary focus is the Marcellus Shale in Susquehanna County, Pennsylvania.

2.      In November 2015, Cabot received a proposed consent order and agreement from the Pennsylvania Department of Environmental Protection ("PaDEP") related to allegations that the Company's faulty gas wells had polluted the water supplies for residents in Susquehanna County, Pennsylvania.  In December 2016, the Company agreed to pay a civil penalty of $300,000, and Cabot assured that the "the source of methane has been remediated."

3.      However, on July 26, 2019, Cabot disclosed that it had received notices of violation from PaDEP in June and November 2017—within months of entering into the consent order—related to complaints by local residents in Susquehanna County about their drinking water supply. The Company also disclosed that it had received two proposed consent orders from PaDEP, which collectively would result in a civil penalty up to $570,000 and would require Cabot to submit "a detailed written remediation plan, continue water sampling and other investigative measures."

4.      On this news, the Company's stock price fell $2.63, or 12%, to close at $19.16 per share on July 26, 2019, on unusually heavy trading volume.

5.      On March 3, 2020, the media reported that Pennsylvania Attorney General Josh Shapiro was conducting "more than a dozen ongoing criminal investigation into fracking and pipeline companies" and that "criminal charges" were expected "in the near future."

6.      On June 15, 2020, the Pennsylvania Attorney General's office charged Cabot with 15 criminal counts following a grand jury investigation that found the Company failed to fix faulty gas wells that are leaking methane into residential water supplies.

7.      On this news, the Company's stock price fell $0.67, or 3.3%, to close at $19.40 per share on June 15, 2020.

8.      These revelations precipitated the filing of a securities class action in this District against Cabot and certain of its officers and directors, captioned *Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation, et al.*, Case No. 3:20-cv-01815-CCC (the "Securities Class Action").

9.      At least half of the Company's current Board could not disinterestedly and independently respond to a litigation demand in connection with the misleading representations because, among other things, seven of the nine current directors are named as defendants herein in connection with their issuance of materially misleading statements.  As a result, a majority of the Board could not disinterestedly investigate whether their conduct constituted breaches of fiduciary duties under Delaware law.

## II.    JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: contribution for violations of Section 10(b) of the Exchange Act of 1934.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District,

and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## III.   PARTIES

### Plaintiff

12.     Plaintiff Jody Ezell purchased 13,896 shares of Cabot stock in May 2015 and has continuously owned his Cabot stock since that date.

### Nominal Defendant

13.     Nominal Defendant Cabot is a Delaware corporation with its principal executive offices located at 840 Gessner Road, Suite 1400, Houston, Texas 77024.  The Company's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "COG."

### Defendants

14.     Defendant Dan O. Dinges ("Dinges") has served as Chief Executive Officer ("CEO") and a Chairman of the Board since May 2002.  He is named as a defendant in the Securities Class Action.

15.     Defendant Scott C. Schroeder ("Schroeder") has served as Chief Financial Officer ("CFO") of the Company since February 2014.  He is named as a defendant in the Securities Class Action.

16.     Defendant Dorothy M. Ables ("Ables") has served as a director of the Company since 2015.  She is Chairwoman of the Audit Committee.

17.     Defendant Rhys J. Best ("Best") has served as a director of the Company since 2008.

18.      Defendant Robert S. Boswell ("Boswell") has served as a director of the Company since 2015.  He is Chairman of the Environment, Health and Safety Committee and a member of the Audit Committee.

19.     Defendant Amanda M. Brock ("Brock") has served as a director of the Company since 2017.  She is a member of the Audit and Environment, Health and Safety Committees.

20.     Defendant Peter B. Delaney ("Delaney") has served as a director of the Company since 2018.  He is a member of the Audit and Environment, Health and Safety Committees.

21.     Defendant Robert Kelley ("Kelley") has served as a director of the Company since 2003.  He is a member of the Audit Committee.

22.     Defendant W. Matt Ralls ("Ralls") has served as a director of the Company since 2011.

23.     Defendant Marcus A. Watts ("Watts") has served as a director of the Company since 2017.  He is a member of the Environment, Health, and Safety Committees.

24.     Dinges, Schroeder, Ables, Best, Boswell, Brock, Delaney, Kelley, Ralls, and Watts are sometimes referred to hereinafter as the "Individual Defendants."

## IV.     DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.     Fiduciary Duties

25.     By reason of their positions as officers, directors, and/or fiduciaries of Cabot and because of their ability to control the business and corporate affairs of Cabot, at all relevant times, the Individual Defendants owed Cabot and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Cabot in a fair, just, honest, and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of Cabot and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to Cabot and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

26.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Cabot, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Cabot, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

27.    To discharge their duties, the officers and directors of Cabot were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of Cabot were required to, among other things:

(a)    Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)    Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)    Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)    When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**B.    Environmental, Health and Safety Committee Charter**

28.    The Environmental, Health and Safety Committee "provid[es] oversight and support of the Company's policies, programs and initiatives on the environment, health and safety."

29.    Specifically, the Committee's charter charges its members with the following responsibilities, among others:

3. Reviewing and providing input to management and the Board of Directors regarding the Company's compliance with laws, regulations, policies, programs and practices with regard to environmental, health and safety matters by, among other things, receiving and reviewing with management reports regarding:

a. the Company's management of and responses to releases, investigations, notices of violations, remediations, civil action or other occurrences involving environmental laws or regulations;

b. the Company's safety program, including reports of incidents, statistics and actions or investigations by any governmental body, as well as the Company's response to the same;

c. the Company's management of and responses to pending legislative and regulatory efforts in the environmental, health and safety and areas likely to significantly affect the Company's business;

d. environmental, health and safety matters relating to the Company's projects and operations and initiatives and training designed to improve the Company's performance with regard to such matters; and

e. the Company's efforts to gather data and communicate externally regarding its environmental, health and safety sustainability programs, initiatives and outcomes.

4. Consulting with the Board of Directors and internal and external advisers of the Company, as appropriate, regarding the management of the Company's health, safety and environmental programs, trends in environmental compliance and the economic effect of such trends on the Company's business.

5. Overseeing and reviewing all external disclosures regarding the Company's environmental, health and safety sustainability data, programs, initiatives and outcomes and providing insight and recommendations to the Board of Directors on such matters.

### C.   Audit Committee Charter

30.   The Audit Committee is responsible for ensuring the integrity of Cabot's financial statements and the Company's compliance with legal and regulatory requirements.

31.   Specifically, the Committee's charter charges its members with the following responsibilities, among others:

2. Review and discuss with management and the independent auditors the annual audited financial statements, as well as disclosures made in management's

discussion and analysis of financial condition and results of operations in the Company's Annual Report on Form 10-K.

\*     \*     \*

4. Prepare and approve the audit committee report required to be included in the Company's proxy statement for the annual meeting (or in the Company's Annual Report on Form 10-K if required to be included therein).

5. Review and discuss with management and the independent auditors the Company's quarterly financial statements, as well as disclosures made in management's discussion and analysis of financial condition and results of operations, including any matters provided in Statement on Auditing Standards No. 100 (significant events during auditor's quarterly review, such as a material change in accounting principles, a significant subsequent event or significant accounting adjustments) arising in connection with the Company's quarterly financial statements prior to the filing of the Company's Quarterly Report on Form 10-Q.

\*     \*     \*

11. Meet periodically with management and the internal auditors to review the Company's major financial risk exposures and the steps management has taken to monitor and control those exposures; and discuss the Company's policies and guidelines concerning financial risk assessment and financial risk management.

\*     \*     \*

27. Review with the Company's Legal Counsel legal matters that may have a material impact on the Company's financial statements, the Company's compliance policies and any material reports or inquiries received from regulators or governmental agencies.

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Background

32.     Cabot is an oil and gas company that explores, develops, produces, and markets oil and gas properties in the United States.  Its primary focus is the Marcellus Shale in Susquehanna County, Pennsylvania.

**B.      The Individual Defendants Cause the Company to Issue Misleading Statements**

33.      On October 23, 2015, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley, and Ralls caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2015.  With respect to environmental matters, the report stated:

> From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions individually or in the aggregate in excess of $100,000.

34.      The above statements in ¶ 33 were materially misleading because they failed to disclose: (i) that Cabot did not have adequate environmental controls and procedures with respect to the wells in Susquehanna County, Pennsylvania; (ii) that Cabot had failed to remedy faulty gas wells, thereby polluting water supplies in the area through stray gas migration; (iii) that, as a result of the foregoing, the Company was reasonably likely to face regulatory and government scrutiny; (iv) that Cabot was reasonably likely to suffer reputational and financial harm due to the scrutiny, including criminal charges due to the continued failure to address the faulty gas wells; and (v) as a result, the Company's business model was unsustainable to achieve the promised growth.

35.      On February 22, 2016, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley, and Ralls signed and caused Cabot to file its annual report on Form 10-K with the SEC for the period ended December 31, 2015 (the "2015 10-K"), representing that the Company "substantially compl[ies] with the Clean Water Act and related federal and state regulations."   Regarding environmental matters, the 2015 10-K stated:

> On November 12, 2015, we received a proposed Consent Order and Agreement from the Pennsylvania Department of Environmental Protection (PaDEP) relating to gas migration allegations in an area surrounding several wells owned and operated by us in Susquehanna County, Pennsylvania. The allegations relating to these wells were initially raised by residents in the area in August 2011. We

9

received a Notice of Violation from the PaDEP in September 2011 for failure to prevent the migration of gas into fresh groundwater sources in the area surrounding these wells. Since then, we have been engaged with the PaDEP in investigating the incident and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to affected residents. ***We believe the source of methane has been remediated and are working with the PaDEP to reach agreement on the disposition of this matter.*** The proposed Consent Order and Agreement is the culmination of this effort and, if finalized, would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $300,000. We will continue to work with the PaDEP to finalize the Consent Order and Agreement and bring this matter to a close.

From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

36.     On May 3, 2016, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley, and

Ralls caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended

March 31, 2016.  Regarding environmental matters, the report stated, in relevant part:

On November 12, 2015, we received a proposed Consent Order and Agreement from the Pennsylvania Department of Environmental Protection (PaDEP) relating to gas migration allegations in an area surrounding several wells owned and operated by us in Susquehanna County, Pennsylvania. The allegations relating to these wells were initially raised by residents in the area in August 2011. We received a Notice of Violation from the PaDEP in September 2011 for failure to prevent the migration of gas into fresh groundwater sources in the area surrounding these wells. Since then, we have been engaged with the PaDEP in investigating the incident and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to affected residents. ***We believe the source of methane has been remediated and are working with the PaDEP to reach agreement on the disposition of this matter.*** The proposed Consent Order and Agreement is the culmination of this effort and, if finalized, would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $300,000. We will continue to work with the PaDEP to finalize the Consent Order and Agreement and bring this matter to a close.

From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in

fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions individually or in the aggregate in excess of $100,000.

37.    On July 29, 2016, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley, and

Ralls caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended

June 30, 2016.  Regarding environmental matters, the report stated, in relevant part:

> On November 12, 2015, we received a proposed Consent Order and Agreement from the Pennsylvania Department of Environmental Protection (PaDEP) relating to gas migration allegations in an area surrounding several wells owned and operated by us in Susquehanna County, Pennsylvania. The allegations relating to these wells were initially raised by residents in the area in August 2011. We received a Notice of Violation from the PaDEP in September 2011 for failure to prevent the migration of gas into fresh groundwater sources in the area surrounding these wells. Since then, we have been engaged with the PaDEP in investigating the incident and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to affected residents. ***We believe the source of methane has been remediated and are working with the PaDEP to reach agreement on the disposition of this matter.*** The proposed Consent Order and Agreement is the culmination of this effort and, if finalized, would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $300,000. We will continue to work with the PaDEP to finalize the Consent Order and Agreement and bring this matter to a close.
>
> From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions individually or in the aggregate in excess of $100,000.

38.    On October 28, 2016, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley,

and Ralls caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended

September 30, 2016.  Regarding environmental matters, the report stated:

> On November 12, 2015, we received a proposed Consent Order and Agreement from the Pennsylvania Department of Environmental Protection (PaDEP) relating to gas migration allegations in an area surrounding several wells owned and operated by us in Susquehanna County, Pennsylvania. The allegations relating to these wells were initially raised by residents in the area in August 2011. We received a Notice of Violation from the PaDEP in September 2011 for failure to prevent the migration of gas into fresh groundwater sources in the area surrounding these wells. Since then, we have been engaged with the PaDEP in investigating the

incident and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to affected residents. ***We believe the source of methane has been remediated and are working with the PaDEP to reach agreement on the disposition of this matter.*** The proposed Consent Order and Agreement is the culmination of this effort and, if finalized, would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $300,000. We will continue to work with the PaDEP to finalize the Consent Order and Agreement and bring this matter to a close.

From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions individually or in the aggregate in excess of $100,000.

39.     On February 27, 2017, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley, and Ralls signed and caused Cabot to file its annual report on Form 10-K with the SEC for the period ended December 31, 2016 (the "2016 10-K"), representing that the Company "substantially compl[ies] with the Clean Water Act and related federal and state regulations."   Regarding environmental matters, the Company stated, in relevant part:

On November 12, 2015, we received a proposed Consent Order and Agreement from the Pennsylvania Department of Environmental Protection (PaDEP) relating to gas migration allegations in an area surrounding several wells owned and operated by us in Susquehanna County, Pennsylvania. The allegations relating to these wells were initially raised by residents in the area in August 2011. We received a Notice of Violation from the PaDEP in September 2011 for failure to prevent the migration of gas into fresh groundwater sources in the area surrounding these wells. Since then, we have been engaged with the PaDEP in investigating the incident and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to affected residents. ***We believe the source of methane has been remediated and we entered into a Consent Order and Agreement with the PaDEP on December 30, 2016. We agreed to pay a civil monetary penalty in the amount of approximately $0.3 million and to continue to provide alternative sources of drinking water to affected residents until the affected water supplies are permanently restored.*** Further, the related gas well is being permanently plugged. Following the plugging of the gas well, additional monitoring will be required to ensure the source of methane has been remediated. Cabot continues to work with the PaDEP to bring this matter to a close.

From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of

12

environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

40.     The above statements in ¶¶ 35-39 were materially misleading because they failed to disclose: (i) that, despite assurances that the Company had remediated the faulty gas wells in Susquehanna County, Pennsylvania, Cabot's activities continued to pollute water supplies in the area through stray gas migration; (ii) that, as a result, the Company was reasonably likely to face regulatory and government scrutiny; (iii) that Cabot was reasonably likely to suffer reputational and financial harm due to the scrutiny, including criminal charges due to the continued failure to address the faulty gas wells; and (iv) as a result, the Company's business model was unsustainable to achieve the promised growth.

41.     On April 28, 2017, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley, and Ralls caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2017.  Regarding environmental matters, the report stated:

From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

42.     On July 28, 2017, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley, and Ralls caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2017.  Regarding environmental matters, the report stated:

From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

43.     On October 30, 2017, defendants Dinges, Schroeder, Ables, Best, Boswell, Brock, Kelley, Ralls, and Watts caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2017.  Regarding environmental matters, the report stated:

> From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

44.     On March 1, 2018, defendants Dinges, Schroeder, Ables, Best, Boswell, Brock, Kelley, Ralls, and Watts signed and caused Cabot to file its annual report on Form 10-K with the SEC for the period ended December 31, 2017 (the "2017 10-K"), representing that the Company "substantially compl[ies] with the Clean Water Act and related federal and state regulations." Regarding environmental matters, the Company stated, in relevant part:

> From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

45.     On April 27, 2018, defendants Dinges, Schroeder, Ables, Best, Boswell, Brock, Kelley, Ralls, and Watts caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2018.  Regarding environmental matters, the report stated:

> From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

46.     On July 27, 2018, defendants Dinges, Schroeder, Ables, Best, Boswell, Brock, Kelley, Ralls, and Watts caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018.  Regarding environmental matters, the report stated:

> From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

47.     On October 26, 2018, the Individual Defendants caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018.   Regarding environmental matters, the report stated:

> From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

48.     On February 26, 2019, the Individual Defendants signed and caused Cabot to file its annual report on Form 10-K with the SEC for the period ended December 31, 2018 (the "2018 10-K"), representing that the Company "substantially compl[ies] with the Clean Water Act and related federal and state regulations."  Regarding environmental matters, the Company stated, in relevant part:

> From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

49.     On April 26, 2019, the Individual Defendants caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2019.  Regarding environmental matters, the report stated:

> From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

50.     The above statements in ¶¶ 41-49 were materially misleading because they failed to disclose: (i) that, despite assurances that the Company had remediated the faulty gas wells in Susquehanna County, Pennsylvania, Cabot's activities continued to pollute water supplies in the area through stray gas migration; (ii) that, since shortly after the Company entered into a Consent Order with PaDEP, Cabot had been engaged in discussions with PaDEP to investigate complaints about contaminated water supply; (iii) that, within months of the December 2016 Consent Order, Cabot received notices of violation with respect to the same misconduct, i.e. faulty gas wells; (iv) that Cabot was reasonably likely to suffer reputational and financial harm due to the scrutiny, including criminal charges due to the continued failure to address the faulty gas wells; and (v) as a result, the Company's business model was unsustainable to achieve the promised growth.

**C.     The Truth Begins to Emerge While the Individual Defendants Continue to Issue Materially Misleading Statements**

51.     On July 26, 2019, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley, and Ralls caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2019.  Regarding environmental matters, the report stated:

> On June 17, 2019, we received two proposed Consent Order and Agreements ("CO&A") from the Pennsylvania Department of Environmental Protection (PaDEP) relating to gas migration allegations in areas surrounding several wells owned and operated by us in Susquehanna County, Pennsylvania. ***The allegations relating to these wells were initially raised by residents in the area in March and***

*June 2017, respectively, in the form of complaints about their drinking water supply. Since then, we have been engaged with the PaDEP in investigating the incidents and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to the affected residents.* We received Notices of Violation ("NOV") from the PaDEP in June and November, 2017, respectively, for failure to prevent the migration of gas into fresh groundwater sources in the area surrounding these wells. With regard to the June 2017 NOV, we believe these water quality complaints have been resolved, and we are working with the PaDEP to reach agreement on the disposition of this matter. The proposed CO&A is the culmination of this effort and, if finalized, would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $215,000. We will continue to work with the PaDEP to finalize the CO&A, and to bring this matter to a close. With regard to the November 2017 NOV, The proposed CO&A, if finalized as drafted, would require Cabot to submit a detailed written remediation plan, continue water sampling and other investigative measures and restore or replace affected water supplies and would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $355,000. We will continue to work with the PaDEP to finalize the CO&A, and to complete the ongoing investigation and remediation.

From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

52.     On this news, the Company's stock price fell $2.63, or 12%, to close at $19.16 per share on July 26, 2019.

53.     On October 25, 2019, defendants Dinges, Schroeder, Ables, Best, Boswell, Kelley, and Ralls caused Cabot to file its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2019. Regarding environmental matters, the report stated:

On June 17, 2019, we received two proposed Consent Order and Agreements ("CO&A") from the Pennsylvania Department of Environmental Protection (PaDEP) relating to gas migration allegations in areas surrounding several wells owned and operated by us in Susquehanna County, Pennsylvania. The allegations relating to these wells were initially raised by residents in the area in March and June 2017, respectively, in the form of complaints about their drinking water supply. Since then, we have been engaged with the PaDEP in investigating the incidents and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to the affected residents. We received Notices of Violation ("NOV") from the PaDEP in June and November,

17

2017, respectively, for failure to prevent the migration of gas into fresh groundwater sources in the area surrounding these wells.  With regard to the June 2017 NOV, we believe these water quality complaints have been resolved, and we are working with the PaDEP to reach agreement on the disposition of this matter. The proposed CO&A is the culmination of this effort and, if finalized, would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $215,000. We will continue to work with the PaDEP to finalize the CO&A, and to bring this matter to a close. With regard to the November 2017 NOV, The proposed CO&A, if finalized as drafted, would require Cabot to submit a detailed written remediation plan, continue water sampling and other investigative measures and restore or replace affected water supplies and would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $355,000. We will continue to work with the PaDEP to finalize the CO&A, and to complete the ongoing investigation and remediation.

From time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder. While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions, individually or in the aggregate, in excess of $100,000.

54.     The above statements in ¶¶ 52-53 were materially misleading because they failed to disclose: (i) that, despite assurances that the Company had remediated the faulty gas wells in Susquehanna County, Pennsylvania, Cabot's activities continued to pollute water supplies in the area through stray gas migration; (ii) that Cabot was reasonably likely to suffer reputational and financial harm due to the scrutiny, including criminal charges due to the continued failure to address the faulty gas wells; and (iii) as a result, the Company's business model was unsustainable to achieve the promised growth.

**D.     The Truth Fully Emerges**

55.     On March 3, 2020, the media reported that Pennsylvania Attorney General Josh Shapiro was conducting "more than a dozen ongoing criminal investigation into fracking and pipeline companies" and that "criminal charges" were expected "in the near future."

56.     On June 15, 2020, the Pennsylvania Attorney General's office charged Cabot with 15 criminal counts following a grand jury investigation that found the Company failed to fix faulty

gas wells that are leaking methane into residential water supplies.  Specifically, as reported in an article by *The Seattle Times*:

> "We find that, over a period of many years, and despite mounting evidence, Cabot Oil & Gas failed to acknowledge and correct conduct that polluted Pennsylvania water through stray gas migration," the grand jury wrote, criticizing Cabot's "long-term indifference to the damage it caused to the environment and citizens of Susquehanna County."

> The Pennsylvania attorney general's office charged Cabot with a total of 15 criminal counts, including illegal discharge of industrial wastes and unlawful conduct under the state's Clean Streams Law. Maximum fines are $50,000 or $25,000, depending on the count.

> "Cabot took shortcuts that broke the law, damaged our environment, harming our water supplies and endangering Pennsylvanians. They put their bottom line ahead of the health and safety of our neighbors," Attorney General Josh Shapiro said in a video statement.

57.     On this news, the Company's stock price fell $0.67, or 3.3%, to close at $19.40 per share on June 15, 2020.

### E.     Defendant Dinges Sold Nearly $2 Million in Cabot Stock While in Possession of Material Non-Public Information

58.     Defendant Dinges was CEO and a director and, as set forth herein, possessed material non-public information regarding Cabot's business condition and model.  Defendant Dinges consciously acted to exploit his knowledge by selling $1.8 million of Cabot stock to his substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
| --- | --- | --- | --- |
| 11/02/2017 | 66,610 | $27.92 | $1,859,751 |
| **Totals** | **66,610** | | $1,859,751 |

59.     Defendant Dinges thus used his fiduciary position to enrich himself and failed to discharge his duties by causing the Company to candidly reveal the truth about the business condition.

## VI.   DAMAGES TO THE COMPANY

60.   As a direct and proximate result of the Individual Defendants' conduct, Cabot has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

a)   Legal and professional fees in connection with the criminal investigation and criminal charges brought by the Pennsylvania Attorney General;

b)   Civil and/or criminal penalties paid to regulators for violations of applicable environmental regulations;

c)   Legal fees incurred in connection with the Securities Class Action;

d)   Any funds paid to settle the Securities Class Action; and

e)   Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Cabot.

61.   In addition, Cabot's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

62.   The actions complained of herein have irreparably damaged Cabot's corporate image and goodwill.  For at least the foreseeable future, Cabot will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Cabot's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

63.   Plaintiff brings this action derivatively in the right and for the benefit of Cabot to redress injuries suffered, and to be suffered, by Cabot as a direct result of breaches of fiduciary duty by the Individual Defendants, contribution for violations of Section 10(b) of the Exchange

Act, and insider trading (i.e. *Brophy* claim).  Cabot is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

64.    Plaintiff will adequately and fairly represent the interests of Cabot in enforcing and prosecuting its rights.

65.    Plaintiff has continuously been a shareholder of Cabot at times relevant to the wrongdoing complained of and is a current Cabot shareholder.

66.    When this action was filed, Cabot's Board of Directors consisted of defendants Dinges, Ables, Best, Boswell, Brock, Delaney Kelley, Ralls, and Watts.  Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Defendant Dinges**

67.    Dinges serves as Cabot's CEO, and therefore is not independent under NYSE listing rules.  As an employee, Dinges derives substantially all of his income from his employment with Cabot, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis.  Dinges personally issued the misleading statements alleged herein.  As a result, Dinges would be interested in a demand regarding his own wrongdoing, and demand is futile as to him.

**Defendants Boswell, Brock, Delaney, and Watts**

68.    Boswell, Brock, Delaney, and Watts served as the members of the Environmental, Health and Safety Committee at relevant times.  As such, they are responsible for the effectiveness of the Company's policies with respect to environmental safety and the policies' compliance with applicable federal and state environmental regulations, including the Clean Water Act.  In their

capacities as Environmental, Health and Safety Committee members, Boswell, Brock, Delaney, and Watts  reviewed and approved the disclosures regarding the Company's compliance with respect to environmental regulations.  As alleged herein, Boswell, Brock, Delaney, and Watts knew or should have known that the Company's faulty gas wells in Pennsylvania had not been remediated, allowing the materially misleading statements to be disseminated in Cabot's SEC filings and other disclosures.  Thus, Boswell, Brock, Delaney, and Watts breached their fiduciary duties and are not disinterested.

69.     For the foregoing reasons, Dinges, Boswell, Brock, Delaney, and Watts, five of the nine directors currently on Cabot's Board, could not disinterestedly and independently consider a demand to take action in connection with the wrongdoing alleged herein.  As a result, demand is excused as to the entire Board.

## COUNT I
### Against Defendants Dinges and Schroeder for Breach of Fiduciary Duty

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     Defendants Dinges and Schroeder each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Cabot's business and affairs, particularly with respect to issues as fundamental as public disclosures.

72.     Defendants Dinges's and Schroeder's conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  Defendants Dinges and Schroeder intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Cabot.

73.     In breach of their fiduciary duties owed to Cabot, defendants Dinges and Schroeder willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

74.     In particular, defendants Dinges and Schroeder knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

75.     As a direct and proximate result of the Defendants Dinges's and Schroeder's breaches of their fiduciary obligations, Cabot has sustained and continues to sustain significant damages.  Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

<u>**COUNT II**</u>
**(Against Dinges and Schroeder for Contribution**
**For Violations of Sections 10(b) and 21D of the Exchange Act)**

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     Defendants Dinges and Schroeder are named as defendants in the related Securities Class Action. The conduct of these Defendants, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

78.     Cabot is named as a defendant in related securities class actions that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Cabot is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the

Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

79.    As officers, directors and otherwise, Defendants Dinges and Schroeder had the power or ability to, and did, control or influence, either directly or indirectly, Cabot's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

80.    Defendants Dinges and Schroeder are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

81.    Defendants Dinges and Schroeder have damaged the Company and are liable to the Company for contribution.

82.    No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

### <u>COUNT III</u>
**Against Defendants Ables, Best, Boswell, Brock, Delaney Kelley, Ralls, and Watts for Breach of Fiduciary Duty**

83.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

84.    Defendants Ables, Best, Boswell, Brock, Delaney Kelley, Ralls, and Watts each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Cabot's business and affairs, particularly with respect to issues as fundamental as public disclosures.

85.     The conduct of defendants Ables, Best, Boswell, Brock, Delaney Kelley, Ralls, and Watts set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  Defendants Ables, Best, Boswell, Brock, Delaney Kelley, Ralls, and Watts intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Cabot.

86.     In breach of their fiduciary duties owed to Cabot, defendants Ables, Best, Boswell, Brock, Delaney Kelley, Ralls, and Watts willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

87.     In particular, defendants Ables, Best, Boswell, Brock, Delaney Kelley, Ralls, and Watts knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

88.     As a direct and proximate result of the breaches of their fiduciary obligations by defendants Ables, Best, Boswell, Brock, Delaney Kelley, Ralls, and Watts, Cabot has sustained and continues to sustain significant damages.  Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT IV
### Against Defendant Dinges – *Brophy* Claim

89.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

90.     As alleged above, defendant Dinges is a fiduciary of Cabot, possessed material, non-public information of Cabot, and used that information to improperly profit from sales of

Cabot stock.  When Dinges directed the stock sales set forth above, he was motivated to do so, in whole or in part, by the substance of the material, non-public information he possessed, and he acted with scienter.

91.     When Dinges sold his Cabot stock, he knew that the investing public was unaware of the negative material information that they possessed.  He also knew that if the information were disclosed, the market price of Cabot stock would be significantly lower. Dinges timed their stock sales to take advantage of the investing public's ignorance of the concealed material facts and obtain a higher price for the stock they sold.  He thereby benefitted by misappropriating Cabot's non-public information.

92.     Plaintiff, on behalf of Cabot, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Cabot, demands judgment as follows:

A.     Declaring that plaintiff may maintain this action on behalf of Cabot and that plaintiff is an adequate representative of the Company;

B.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.     Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Cabot;

D.     Directing Cabot to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Cabot and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or

Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

   1. a proposal to strengthen the Company's controls over financial reporting;

   2. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

   3. a proposal to strengthen Cabot's oversight of its disclosure procedures;

   4. a provision to control insider transactions; and

   5. a provision to permit the stockholders of Cabot to nominate at least three candidates for election to the Board;

  E. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Cabot has an effective remedy;

  F. Awarding to Cabot restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

  G. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

  H. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

**THE ROSEN LAW FIRM, P.A.**

Dated: October 22, 2020

By: */s/ Jacob A. Goldberg*
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
E-mail: jgoldberg@rosenlegal.com

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
712 Fifth Avenue
New York, New York 10019
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

-and-

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com

*Counsel for Plaintiff Jody Ezell*

DocuSign Envelope ID: 9040B3D0-3B6A-4FBD-AF97-5BDF5312423

## <u>VERIFICATION</u>

I, Jody Ezell, do hereby verify that I am a holder of common stock of Cabot Oil & Gas Corporation, and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint").  I have authorized the filing of the Complaint.  I have reviewed the Complaint.  All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 10/19/2020

DocuSigned by:

4EC1BABFC78C4D4...

Jody Ezell